The object of this suit is to have established the common boundary line between the lots owned by the parties thereto in the "Guinea or Filhiol's Second Addition to Monroe, Louisiana". Both sides to the suit trace their title to a common author, Hypolite Filhiol, who laid out the subdivision.
The lots of the subdivision border the south line of Breard Street, which runs easterly and westerly, and extend southerly between parallel lines over five hundred feet (500') to Washington Street, formerly called "Old DeSiard Road". In order to reflect the record facts of the case, it is necessary to deal only with Lots 100, 102 and 104, and to some extent with Lot 98. Lot 100 has a frontage on Breard Street of 100.12 feet, while the frontage of lots 102 and 104 thereon is 100.11 feet each. Of this tier of lots, 98 is on the east side and 104 is on the west side.
The Court appointed a surveyor to establish the boundary line in controversy. He did so. It was favorable to the contention of the plaintiffs. In effect the case was tried as though plaintiffs had moved to have the survey homologated and defendants had filed opposition thereto, but such written pleadings, if filed, are not in the record.
The Court approved and homologated the survey as returned into Court, and from judgment to that effect, the defendants have appealed.
On October 11, 1869, Hypolite Filhiol, by act of sale, filed and recorded on that date in Conveyance Record Book "S", pages 243-244, of Ouachita Parish, conveyed to Caroline Courtney Lot 104 of said subdivision.
On October 20, 1869, Filhiol by act of sale filed and recorded on that date in Conveyance Record Book "S", pages 267-268, conveyed to John Jamison Lot 102 of the subdivision. The two lots adjoin.
The right-of-way of the Missouri Pacific Railway (formerly the LRM Railway) traverses Lot 98 from north to south. The area embraced by this lot is generally referred to as "Congo Street". *Page 495 
On April 1, 1910, Jamison donated to his daughter, Ida Jamison McNeal, a parcel of land described as follows, viz.:
"Beginning at a point 138 feet west from the intersection of Breard Street with Congo Street and running thence along the south side of Breard Street, in a westerly direction a distance of 42 feet; thence running back in lines parallel to Congo Street, a distance of 160 feet."
"Being a portion of the property acquired by the donor from H. Filhiol as per deed on file and of record in Conveyance Book 'S', page 258 of the records of Ouachita Parish, Louisiana."
The parcel of land intended to be conveyed by this act of donation is now and has been for many years physically occupied by the donee.
On March 5, 1912, John Jamison and the heirs of his deceased wife, sold and conveyed to The Peoples' Homestead and Savings Association the following described lots, viz.:
"In the City of Monroe, Louisiana * * * beginning at a point in (on) the South side of Breard Street, a distance of 180 feet west from the intersection of Breard and Congo Streets; thence running in a westerly direction along south side of Breard Street, a distance of 58 feet; thence running back in (between) parallel lines, a distance of 160 feet.
"Being the same property acquired by John Jamison by purchase from H. Filhiol on the 20th day of October, A.D. 1869, as per deed on file in this (Clk.'s) office, and of record in Conveyance Book 'S', page 257."
Nearly one dozen persons, at different times, have held deeds to this last described lot. Title is now held by the plaintiffs herein, Robert J. Jackson, Jr. and his wife, Gertrude Gray Jackson.
It will be observed that if confined to Lot 102, the lot sold by John Jamison to The Peoples' Homestead and Savings Association (to which plaintiffs have deed now) and that donated to Ida McNeal, having fronts on Breard Street of 58 and 42 feet, respectively, embrace the entire frontage of that lot on that street, save .11 of a foot. Evidence in the case discloses that the northern portion of Lot 100 of said addition, fronting on Breard Street, less a strip of 12 feet along its east side, is now owned and occupied by one Pietro Tornatore, and it is further shown that the lot occupied by Ida McNeal adjoins the lot of Tornatore on its west side. This, of necessity, locates the McNeal lot in the northeast corner of Lot 102.
Caroline Courtney, who acquired said Lot 104 from Filhiol, never disposed of the northern portion thereof. Her heirs, Olivia J. Davis, Elvia Bartlett, Ida McNeal and Sophy Lexcy, were recognized as such and sent into possession by judgment of the District Court for Ouachita Parish, on May 12, 1928. The judgment of recognition, etc., described the property inherited from Caroline Courtney, as being: "Lot 104 of Filhiol's Second or Guinea Addition, less the following described lots sold out of the same," etc.
Here follows a description of the excepted lots, none of which front on Breard Street.
Sophy Lexcy sold her one-fourth interest in this lot to her coheirs, and it is now in its entirety claimed by Olivia Davis, Ida McNeal, and the sole heirs of Elvia Bartlett, viz.: Morris Bartlett, Jr., Mrs. Clotile Bartlett Simmons and Sirpora Hortense Breckenridge, defendants herein. The boundary line sought to be established herein is the common line (wherever it may be) between the lot of defendants in said Lot 104 and that of the plaintiffs, according to the description in their deed, partly in Lot 104 and partly in Lot 102.
According to the plat, survey and proces verbal thereof, made and submitted by the surveyor appointed by the Court to determine and locate the common boundary line involved herein, it is 115.24 feet from the point of intersection of the south boundary line of Breard Street and west line of Congo Street, to the Northeast corner of Lot 102, which, as we understand the record, is really the northeast corner of Ida McNeal's lot, acquired by donation from John Jamison. However, the act of donation plainly says that the northeast corner of the lot is 138 feet from said intersection *Page 496 
of Breard and Congo Streets. Therefore, according to the description in the act of donation the northeast corner of Ida McNeal's lot is really 22.76 feet west of the northeast corner of said Lot 102. If this be true, there is a strip of land 22.76 feet wide between the cast boundary of her lot and the west boundary of Lot 100. We do not understand this to correspond with the facts of present occupancy.
It seems clear to us that this controversy has as its inception and is directly traceable to the above mentioned error, the beginning of the boundary of the Ida McNeal lot.
Evidently, when it came to outlining a description to go into the deed by John Jamison and his children to The Peoples' Homestead and Savings Association on March 15, 1912, nearly two years subsequent to the date of the donation by Jamison to Ida McNeal, the person who prepared the description was influenced by the description in the act of donation. He simply added the 138 feet to the 42 feet that her lot fronts on Breard Street, making 180 feet, and adopted the west end of this measurement as the proper beginning of the northeast corner of that part of Lot 102 yet owned by John Jamison and his children. By doing this, the starting point, the northeast corner of the description, was 22.76 feet too far west. This necessarily placed the west boundary line of the lot 22.76 (the surveyor's plat says 22.65 feet) beyond the west line of Lot 102, and onto property not at any time owned by John Jamison. The map or plat prepared by the surveyor shows that the west line of plaintiffs' residence is slightly over the common line between Lots 102 and 104.
From the foregoing analyses of the descriptions considered, it follows that if the Ida McNeal lot, as now occupied by her, is in the northeast corner of Lot 102, and plaintiff possesses according to the description in his deed, there is a strip of 22.76 feet between the two possessions. This, we understand, is not true.
The situation reflected from the above discussion was evidently recognized by Byron Marcus at some time while he had title to the lot now claimed by the plaintiffs, and the heirs of Caroline Courtney, because on September 26, 1927, they executed an act of exchange whereby these heirs conveyed to Marcus a strip of land described as: "Beginning at the intersection of the common boundary line of Lots 102 and 104 with south line of Breard Street and running westerly on said line six feet, and thence back (southerly) between parallel lines 160 feet."
By this transfer the residence now occupied by the plaintiffs, was made to rest entirely upon land owned by Marcus. In return for this strip of land, Marcus transferred unto Ida McNeal a strip of land of same width and depth, fronting on the south side of Breard Street, having as its beginning (northeast corner) a point 42.05 feet west of the intersection of the line between Lots 100 and 102, with southern line of Breard Street and extending on said line westerly 6 feet, and thence south between parallel lines 160 feet.
Unfortunately for all concerned, in the succession proceeding of Marcus the acquisition of this 6 foot strip by him was overlooked, as well as the conveyance by him of like strip from the cast side of his lot to the defendants herein. The oversight has continued uninterruptedly to the present time.
In regard to the exchanges, above referred to, if Marcus' east line began 180 feet from the corner at the intersection of Breard and Congo Streets, and defendants' began 138 feet from said corner, then each transferred to the other land that they, respectively, already owned.
The surveyor herein simply re-established the corner at the intersection of Congo and Breard Streets and ran a line along the south boundary line of Breard Street, a distance of 180 feet and adopted the terminus of this line as the northeast corner of plaintiffs' property. He then continued the line from this point westerly on Breard Street 58 feet and adopted this point as the northwest corner of their property. He then ran southerly parallel with the lines of said lots a distance of 160 feet and established the southwest corner of plaintiffs' lot. By proceeding in this *Page 497 
manner, the surveyor entirely overlooked the record fact that the defendants held title to all of the north end of Lot 104 that faced on Breard Street, except the six foot strip formerly exchanged with Marcus and that their title, springing from Filhiol, the common author, was the more ancient.
By proceeding as he did, the surveyor, in a measure, passed upon the relative strength of the conflicting titles, and that is a judicial question.
Omitting from consideration the six foot strip exchanged with Marcus, there is, in reality, involved in this controversy title to a strip of land 22.76 (or 22.65) feet wide, 160 feet long, off of the cast side of Lot 104, which fronts on Breard Street. Until this question is decided, the true boundary line between the properties of the parties is impossible of determination. If it is finally adjudged that plaintiffs have the better title to this strip of land, then the line established by the surveyor herein will be the correct line between the respective properties. If plaintiffs are not adjudged to own the strip of land in its entirety, defendants' ownership will necessarily have to be confined to the west 16.76 (or 16.65) feet of the tract, because they have not re-acquired said six foot strip exchanged by them with Marcus. In that event the true boundary line between the parties will be the west line of said six foot strip.
The question of title cannot be determined in this case.
For the reasons herein assigned, the judgment from which appealed is reversed and set aside, and plaintiffs' suit is hereby dismissed as of nonsuit. Plaintiffs are cast for all costs.
 On Application for Rehearing