TALIAFERRO, Judge.
This is a petitory action wherein the plaintiffs seek to be adjudged owners in indivisión of the following described property — to wit: “A certain parcel of ground situated in Filhiol’s Second or Guinea Addition to the City of Monroe, Louisiana, described as beginning at a point on the South line of Breard Street where the East line of Lot 104 of said Addition intersects therewith: proceed in a westerly direction along the South line of Breard Street a distance of 22.77 feet; thence 'back between parallel lines, one of which is the East line of said Lot 104 a distance of 160 feet (less and except a strip Six (6) feet wide along the East side thereof, which strip was the subject of an exchange between Olivia Jamison Davis, Ida Mc-Neal and Elvia Bartlett and Byron Marcus executed on the 26th day of September, 1927 and recorded in Conveyance Book 164, at page 183),” which has been decreed by this Court to be in the actual possession of the defendants, Robert J. Jackson, Jr. and wife, Gertrude Gray Jackson.
The suit was instituted pursuant to final judgment of this Court rendered in the suit styled, Jackson, Jr. et al. v. Davis et al., and reported in 49 So.2d 497. This last mentioned suit is a sequel to the judgment of this Court rendered in the suit entitled “Jackson, et al. v. Davis et al.” reported in La.App., 43 So.2d 494.
The entirety of the lot 104 mentioned in the description above given, was acquired by Caroline Courtney from Hypolite Fil-hiol on October 11, 1869. She lost the north 100 feet of the lot by tax sale to Louis H. Goldman in July 1893. She died owning the next 60 feet across the lot below said 100 feet. L. H. Goldman, the tax purchaser, on December 28, 1894, sold said north 100 feet of the lot to John Jam-ison, her son-in-law, who, at the time was the owner of the entirety of Lot 102, which adjoins Lot 104 of the said Filhiol’s or Guinea Addition to the City of Monroe, on its east side.
Caroline Courtney died intestate, the date of which is not shown. She was survived by two children, viz.: Henrietta Bell Jam-ison, the wife of John Jamison, aboved mentioned, and Alex.Rhodes.
Henrietta Bell Jamison died intestate on May 15, 1911, survived by Elvia, who mar *294 ried one Morris Bartlett; Olivia, who married one Emmet Davis, and Ida, who married B. F. McNeal. These three persons were also the sole heirs of their father, John Jamison.
At the death of Elvia Bartlett, her sole surviving heirs were petitioners, Morris Bartlett, Jr., Clotile Bartlett Simmons and Sipora Hortense Breckenridge.
On December 13, 1927, the three above named daughters of Henrietta Bell Jami-son were recognized as ¡her sole heirs by judgment of the District Court of Ouach-ita Parish, and sent into possession of the said 100 feet off of the north side of Lot 104. However, their father, John Jamison, was then dead, hut as his sole 'heirs, they are not mentioned.
On May 12, 1928, the above named sole heirs of Henrietta Bell Jamison, and Sophie Lexcy, sole surviving heir of Alex Rhodes, were recognized as the sole heirs of Caroline Courtney, deceased, and as such, sent into possession of all of said Lot 104, excepting portions theretofore sold off, including said north 100 feet thereof lost by tax sale to Goldman, above mentioned.
On April 3, 1928, Sophie Lexcy transferred to Olivia Davis, Elvia Bartlett and Ida McNeal all of her interest in the portions of said Lot 104 owned by Caroline Courtney, her grandmother, at her death.
Through this act of sale to them and the inheritances described above, plaintiffs base their claim of ownership to the embattled lot.
Defendants deraign their title back to Hypolite Filhiol, also. On the 20th day of October, 1869 he sold to said John Jam-ison the entirety of Lot 102 of the mentioned addition. This deed was registered in Conveyance Book S. pages 257-258 of the records of Ouachita Parish. By virtue of this chain of title, details of which will be hereinafter set out, defendants allege ownership of the lot in question; and, of course, deny that plaintiffs have any interest therein.
Defendants filed exceptions of no cause and no right of action, pleas of estoppel and of prescription of 10 years and 30 years. The estoppel plea and that of ten years prescription were sustained. The suit was dismissed at plaintiffs’ cost, and they appealed.
The record history of the lot in controversy, ownership of said lots 102 and 104, their relative situation, etc., is elaborately discussed in the opinion of this Court in 43 So.2d 494, referred to above.
Filhiol’s Second or the Guinea Addition, in part, consists of a tier of lots, numbered from east to west, 98, 102, and 104. Their northerly ends adjoin Breard Street and Washington Street is on the south. The frontage on Breard Street of Lots 98 and 100 is 100.12 feet each; that of Lot 102 is 100 feet, while that of Lot 104 is 100.11 feet.
On April 1, 1910, John Jamison executed to his daughter, Ida McNeal, a donation of a lot of land described therein as follows, to wit:
“Beginning at a point One Hundred and Thirty-eight feet west from the intersection of Breard Street with Congo Street and running thence along the south side of Breard Street in a westerly direction a distance of Forty-Two feet; thence running back in lines parallel to Congo Street a distance of One Hundred and Sixty feet.
“Being a portion of the property acquired by the Donor herein from H. Filhiol as per deed on file and of record in -Conveyance Book ‘S’ page 258 of the records of Ouachita Parish, Louisiana.”
To two monumental errors in this description may be ascribed this suit, the two preceding ones, plus the expense of several surveys and much hard feeling between the parties litigants, all neighbors and members of the colored race. The first error is the reference to “Congo” Street. By express dedication, there is no such street above Washington Street, hut that part of Lot 98, not embraced in railroad right-of-way, that traverses it from north to south has been in many deeds referred to as “Congo” Street, and locally goes by that name. There is a dedicated street below Lot 98 named “Congo”, but it ends at Washington Street.
*295 The other error lies in the measurement, 138 feet west of the intersection of Breard Street and so-called "Congo” Street. If we concede that “Congo” Street embraced all of Lot 98 outside the railroad right-of-way, the measurement should have read 100.12 feet, being the frontage of Lot 100 on Breard Street, ¡bcause it is certain that the donor intended to convey and the donee intended to acquire a parcel of land in the northeast corner of Lot 102, owned by Jam-ison, that measured westerly from said northeast corner 42 feet on Breard Street. The donee, Ida McNeal, took possession of a lot in Lot 102 that measures 42 feet on Breard Street from the northeast corner of Lot 102, erected thereon a home, and today lives on same.
Had the description of the McNeal lot begun at the intersection of Breard Street with the railroad right-of-way, as some think it should have, the measurement to her northeast corner should have read 115.-24 feet and not 138 feet. The east line of the lot possessed by Ida McNeal is common with the west line of Lot 100 and another person has deed to all of that lot, save a strip on the east side, 12 feet wide, and his possession adjoins that of Ida Mc-Neal.
The errors of description in the donation to Ida McNeal superinduced other errors.
On March 5, 1912, John Jamison, a widower, and his three daughters, above named, executed deed to the Peoples Homestead & Savings Association, wherein the description reads, to wit:
“A lot or parcel of ground in the City of Monroe, Louisiana, said lot beginning at a point in the south side of Breard Street, a distance of one hundred and eighty feet west from the Intersection of Breard and Congo Streets, thence running in a westerly direction, along the south side of Breard Street, a distance of fifty-eight feet; thence running back in parallel lines, a distance of one hundred and sixty feet.

"Being the same property acquired by John Jamison, by purchase from H. Fil-hiol, on the 20th day of October, A.D. 1869, as per deed on file in this office, and of record in Conveyance Book ‘S’ page 257.”

As the north line of Lot 102 measures even 100 feet, it is quite clear that the grantors in this act of sale intended to convey the balance of the northern portion of the lot then owned by them, which had a frontage of 58 feet on Breard Street and which added to the frontage of the McNeal lot, makes 100 feet. This conclusion has convincing support in the language of the last clause of the description in which it is said that the property conveyed was “acquired by John Jamison by purchase from H. Filhiol”, etc. Jamison acquired no part of Lot 104 from Filhiol. If this conclusion is not adopted, then the deed must be construed so >as to embrace the lot in question and also the six foot strip adjoining it on the east side, referred to, about which we shall comment hereinafter.
On March 5, 1912 the Peoples Homestead & Savings Association conveyed the property to John Jamison by the same description as appears in the deed to it, save the reference to deed from Filhiol to Jamison, which is omitted. Jamison sold to Solomon Gross on July 5, 1913; Gross to Celia Gol-mon on November 28, 1913; Celia Golmon to J. Y. Covington on August 31, 1916; J. Y. Covington to Allie Ward on July 9, 1919; Allie Ward to Byron Marcus on October 26, 1923.
In a controversy of this kind it often occurs that pertinent written instruments contain declarations, descriptive or otherwise, that clarify an intent otherwise cloudy.
In the deed from John Jamison to Solomon Gross in July, 1913, after describing the lot the same as appears in the deed from the Peoples Homestead & Savings Association to Jamison, the boundaries thereof are given, which are in part, as follows: “On the east by property of Ida McNeal * * * and on the west by a 12 foot alley, which is not yet open, but is to Ibe dedicated at once by this vendor.”
The testimony makes it clear that the alley referred to was to be along the east side of Lot 104. However, it does not appear that it was ever formally dedicated. It *296 is highly significant that Jamison and Gross both understood how the lot was bounded on the east and signed the deed fixing such boundary.
In each subsequent deed of the chain ending in defendants, excepting that to them and to their vendor Masur, it is declared that the property conveyed “is the same” as that acquired by the vendor from his (giving the name) vendor on a certain date (giving it) ; in each deed reference is specifically made to the record book and page where the referred to deed is registered. In effect, these references put into each of said deeds the known fact that the east boundary of the lot therein intended to be conveyed was the McNeal lot.
After Marcus acquired the property he had the common line between it and Ida McNeal lot run by a licensed surveyor, and it was found that her garage was entirely upon his land. He also at the same time had his west line established (common line between Lots 102 and 104), and it was disclosed therefrom that his residence was a few feet over the line between said lots, and upon land in Lot 104, then claimed by the plaintiffs herein, being that in controversy, plus said 6 foot strip. Marcus’ action at that time clearly reflects that he recognized the line ¡between Lots 102 and 104 as being the west boundary of his property, and-that his frontage of 58 feet was entirely within the limits of said Lot 102.
To adjust the differences arising from the revelations of the survey, Marcus, Olivia Davis, Elvia Bartlett and Ida Mc-.Neal entered into an exchange on September 26, 1927, wherein and whereby the last three named conveyed to Marcus a strip of land 6 feet wide off of the east side of Lot 104, described as beginning at the intersection of the common boundary line of Lots 102 and 104 with south line of Breard Street, and running westerly on said line 6 feet, and thence back (southerly) between parallel lines 160 feet. This acquisition by Marcus placed the residence entirely upon property owned by him. By the exchange the plaintiffs were given by Marcus a strip 6 feet wide and 160 feet long, from his lot adjacent to the land of Ida McNeal, having as its northeast corner a point 42.05 feet west of the intersection of Lots 100 and 102, with south line of Breard Street.
If the north lines in the descriptions in the deed to Marcus and in that to Ida Mc-Neal are given literal effect, each side in the contract of exchange was allotted land each already owned.
At the succession sale of property of Byron Marcus, on September 11, 1943, Herman Masur was adjudicated: “Lot beginning 180. feet west of Congo Street, fronting 58 feet on south side of Breard Street, depth 160 feet.”
He sold by practically the same description to defendants on January 3, 1946. It does not appear that the 6 foot strip owned by Marcus was sold by independent description to any one.
The two surveys made prior to the first suit, 43 So.2d 494, when viewed in the light of the literal descriptions in the many deeds ending in defendants, are incorrect in that the starting point of the surveys is not the correct beginning of the 180 foot line. All of the deeds, save those to Masur and defendants, describe the 180 foot line as beginning at the intersection of Congo Street and Breard Street, while the description in the Masur deed and in that by him to defendants say plainly that the lot therein conveyed begins 180 feet from Congo Street and runs westerly on Breard Street 58 feet.
Each surveyor concluded that, regardless of the calls in the deeds, the 180 foot line ought to begin on the west side of the right-of-way, which is 15.12 or 15.06 feet east of the intersection of Congo Street, so called, and Breard Street. They admit that if the 180 foot line begins at the right-of-way and defendants’ property begins on Breard Street at the line’s western end, there will be left a strip of land, not claimed by either side to the suit, adjoining the McNeal lot on its west side for its entire length, 22.71 feet wide. This is wholly at variance with the clear intent of parties to the deeds down to Marcus, and likewise at variance with Marcus’ own interpretation of the limits of his ownership after having his land surveyed. Such a construction *297 of the deeds overlooks entirely the many clear boundary calls that the lot being conveyed is bounded on its east side by the Ida McNeal lot.
The plea of estoppel is predicated upon the action of Ida McNeal, Olivia Davis and the mother of the other plaintiffs with their father, John Jamison, in signing the deed to the Peoples Homestead & Savings Association on March 5, 1912. They contend that this deed includes the lot in controversy. We do not think the plea- well founded because the qualifying part of the description,^-that is, that the property conveyed is “the same property acquired by John Jamison by purchase from H. Filhiol”, etc. should be given full effect and is controlling of any error or errors in the primary description. Surely, by construing the primary and secondary descriptions together, the conclusion is inevitable that the lot conveyed falls within the boundaries of Lot 102 which Jamison acquired from Filhiol. The pleas of prescription of 10 and 30 years are also without merit.
The plea of prescription of 30 years is wholly without merit because not one vendee in defendants’ chain of title, save themselves, has actually or physically possessed the lot in controversy. It is shown that the Jamisons had such possession of the lot until 1910, when a fire destroyed the fence.
As regards the prescription of 10 years, if such a plea ever had or could have had any merit, the action of Byron Marcus has, in our opinion, effectually destroyed it. The deed to him by Allie Ward-on October 26, 1923, continued the error (the 180 foot line) that began with the deed by John Jamison and others to the Peoples Homestead & Savings Association, but certainly he did not claim to own nor did he assert possession of the lot in dispute. As the tenant house on the lot he really claimed to own, extended over the line between Lots 102 and 104, surely to the extent of the encroachment he could have advanced serious claim by prescription, but. he candidly conceded ownership beyond said boundary line to be in the Jamison heirs, and settled the question by acquiring (in exchange) the mentioned 6 foot strip, for which he gave a thing of value. Can it be reasonably contended that thereafter Marcus could have successfully asserted ownership to the lot in controversy? We believe not. And, title out of him passed less than ten years ago.
The exceptions of no cause and no right of action are based upon the same record facts as is the plea of estoppel, and are, for the reasons assigned in overruling that plea, untenable.
The record is wholly barren of testimony even intimating that one of the various owners in defendants’ chain of title, except themselves, has claimed or asserted title to or interest in the lot in controversy or in the 6 foot strip exchanged to Marcus. The controversy arose only after defendants bought from Herman Masur in 1946. Masur testified as a witness in the case. He stated that to his knowledge no controversy over the line ever existed before the present one, and that when he purchased from Marcus he believed he was getting a good title to the “property.” He was not interrogated as to his idea of the location of the west line of his lot. He said the house was leased to tenants by Marcus and he continued to so handle it after his purchase at Marcus’ succession sale.
Therefore, for th'e reasons herein assigned, the judgment from which appealed is annulled, avoided and reversed; and, for said reasons, there is now judgment in favor of the plaintiffs, Olivia Jamison Davis, Ida Jamison McNeal, Morris Bartlett, Jr., Clotile Bartlett Simmons and Si-pora Hortense Breckenridge, and against the defendants, Robert J. Jackson, Jr., and his wife, Gertrude Gray Jackson, decreeing them, said plaintiffs, to be the lawful owm ers and entitled to the possession of the following described piece and parcel of land, being that involved herein, to wit: “A certain parcel of ground situated in Fil-hiol’s Second or Guinea Addition to the City of Monroe, Louisiana, described as beginning at a point on the South line ot Breard Street where the East line of Lot 104 of said Addition intersects therewith; proceed in a westerly direction along the *298 South line of Breard Street a distance of 22.77 feet; thence back between parallel lines, one of which is the East line of said Lot 104, a distance of 160 feet (less and except a strip Six (6) feet wide along the East side thereof, which strip was the subject of an exchange between Olivia Jami-son Davis, Ida McNeal and Elvia Bartlett and Byron Marcus, executed on the 26th day of September, 1927, and recorded in Conveyance Book 164, at page 183.)”
Defendants are cast for all costs.
KENNON, J., not participating.